IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLOBALTAP LLC,<br><br>Plaintiff,<br><br>v.<br><br>ELKAY MANUFACTURING COMPANY,<br><br>Defendant. | Case No.<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, GlobalTap LLC ("GlobalTap"), for its Complaint against Defendant Elkay Manufacturing Company ("Elkay"), states as follows:

### SUMMARY OF CLAIMS

1. GlobalTap asserts claims for: (1) patent infringement; (2) trade secret misappropriation under the Illinois Uniform Trade Secret Act, 765 ILCS 1065/1 et seq.; (3) breach of contract; (4) fraud; and (5) unfair competition.

### THE PARTIES

2. GlobalTap is a Michigan Limited Liability Company with its headquarters located at 18075 Mt. Zion Road, Galien, Michigan, 49113.

3. Originally founded and incorporated in Oak Brook, Illinois, Elkay is a Delaware corporation with its global headquarters, president, secretary and registered agent, located at 2222 Camden Court, Oak Brook, Illinois 60523.

### JURISDICTION AND VENUE

4. Jurisdiction exists under 28 U.S.C. §1331 and 1367(a). Even without the patent claim, jurisdiction would exist pursuant to 28 U.S.C. §1332, inasmuch as there is complete diversity between the parties and the matter in controversy exceeds $75,000. Venue is appropriate in this district pursuant to 28 U.S.C. §§1391 and 1400(b).

## BACKGROUND

5.  GlobalTap was founded in 2008 with the goal of providing the public with clean, free, and accessible water by offering an attractive and reliable alternative to bottled water. To that end, GlobalTap began development on an original concept for an Outdoor Bottle Filling Station in late 2008. That product concept is the centerpiece of GlobalTap's effort to curb bottled water consumption -- and its resulting detrimental environmental impact -- through the installation of reusable water bottle filling fountains in public spaces.

### GlobalTap Discloses Its Plans To Elkay Under A Confidential Disclosure Agreement

6.  Elkay's involvement in GlobalTap's work first began in February 2009. At that time, Elkay expressed an interest in partnering with GlobalTap, and indicated that it would like to pursue the prospect of acting as GlobalTap's manufacturer for the Outdoor Bottle Filling Station. Consistent with this stated goal, on February 27, 2009, Elkay executed a Confidential Disclosure Agreement with GlobalTap. (Exhibit A).

7.  The February 27, 2009 Elkay-GlobalTap non-disclosure agreement is quite clear: Section 2.4 prohibits Elkay from using, for its own commercial purposes, GlobalTap's confidential information. (Exhibit A at Section 2.4). Included within the definition of confidential information are GlobalTap's "business plans…, methods, strategies, prototypes, designs, process feasibility issues, market potential information, consumer and supplier data, regulatory and safety strategies, laboratory methods and assays, project approaches and models, technology issues, and clinical data" in connection with GlobalTap's project to install bottle filling stations for the municipal market.

8.  When GlobalTap and Elkay began their discussions in February 2009, Elkay had no similar product in development. On February 27, 2009, Elkay executives representatives told

GlobalTap that Elkay had never considered the concept of an outdoor water bottle filling station. Elkay later stated in an internal analysis, "No true competitive product exists today." Elkay also determined that GlobalTap's Outdoor Bottle Filling Station would be "first-to-market," and that Elkay could derive a "competitive edge" from GlobalTap's existing "relationships with city governments."

9. In 2008, GlobalTap engaged a prominent design firm, IDEO, to further develop the Outdoor Bottle Filling Station concept. IDEO subsequently applied its professional design expertise to analyze idea, concept, and user experience for the intended GlobalTap product, and with GlobalTap's input and assistance, ultimately prepared numerous design concepts. All of these were shared with Elkay pursuant to the parties' Confidential Disclosure Agreement.

10. In 2009, GlobalTap prepared an exhaustively detailed, 101-page business plan. That document addressed in detail GlobalTap's "Market Opportunity and Business Concept," "Marketing Plan," "Operating Plan," and "Financial Projections." The business plan specifically addressed GlobalTap's marketing and communications plan for project concept, scaling, and planning for various public locations; its potential revenue models; and its action plan for the ensuing year. Given the commercially sensitive nature of its contents, GlobalTap's business plan was clearly marked "Private and Confidential" and "Confidential and Proprietary." At Elkay's request, GlobalTap provided that business plan to Elkay pursuant to the parties' Confidential Disclosure Agreement.

### GlobalTap And Elkay Enter Into A Sales And Distribution Agreement

11. On November 11, 2009, Elkay and GlobalTap signed a Sales and Distribution Agreement. (Exhibit B). Under the terms of that Agreement, GlobalTap committed that Elkay would be its exclusive supplier for the Outdoor Bottle Filling Station. The specific design of the product was depicted in Exhibit A of that Agreement; a product which both parties called "the

cane" in oral and written discussions about the project. Consistent with the parties' discussions, the Agreement also contemplated that the parties would work together on "new outdoor water bottle filling stations products contemplated by Distributor [GlobalTap] and based on the products." (Exhibit B at Section 8.1). The Agreement also gave Elkay a right of first refusal for the manufacture of such products: "[F]or a two year period after termination or expiration, Supplier [Elkay] shall have the right of first refusal to manufacture any outdoor water bottle filling station developed by Distributor either alone, with Supplier or with a third party (parties) on substantially the same terms and conditions as offered by a third party manufacturer." (Id.).

12. The Agreement provided that the procedures for GlobalTap's order of product were to be set at Elkay's discretion: "Distributor shall order such Product as it shall desire from Supplier pursuant to such reasonable procedures as Supplier shall periodically specify." (Exhibit B at Section 2.1). Nonetheless, Elkay was required to develop all tooling at its sole expense: "Supplier will be responsible for obtaining, at its sole cost and expense, all tooling necessary for the manufacture of the Product…" (Exhibit B at Section 1.3).

13. Finally, the Agreement provided that either party could terminate 30 days after notice of default; however, upon termination, Elkay "shall have no right to utilize the Product Design for the manufacture of Product…." (Exhibit B at Sections 7.2 and 7.3).

### GlobalTap Successfully Launches Its Pilot Program In San Francisco

14. On December 17, 2009, GlobalTap accomplished a successful pilot launch of its product in San Francisco. That launch resulted in television coverage, newspaper articles and blogs on "green" websites. The publicity resulted in numerous inquiries to GlobalTap from schools, parks and museums in cities around the world.

**Elkay Implements Scheme To Cut Off GlobalTap
And Launch Its "Own" Outdoor Bottle Filling
Stations In Direct Competition With GlobalTap**

15.     At some point after that public launch (GlobalTap does not know when), Elkay devised a plan in which it would: (1) exit from the Sales and Distribution Agreement, and do so in a manner which threatened GlobalTap's ability to survive, and (2) launch its "own" version of GlobalTap's reusable water bottle filling stations in direct competition with GlobalTap. Elkay kept that plan secret from GlobalTap.

16.     As part of that plan, Elkay began to create hurdles for GlobalTap which Elkay would use as a pretext to sever the relationship. For example, on April 8, 2010, an Elkay executive informed GlobalTap that in order for Elkay to proceed with the relationship: "GlobalTap will have to commit to either a funded development project where we are reimbursed for our product development costs, or a committed annual volume where you pay for the units up front." Elkay was well aware that GlobalTap did not have the financial wherewithal to commit to either of these alternatives.

17.     Despite the fact that the Sales and Distribution Agreement required Elkay to pay for "all tooling necessary for manufacture of the Product," on April 27, 2010, an Elkay executive informed GlobalTap that it would not develop "tooling for the cane without at least 100 units on order and another 100 units in backlog."

18.     Elkay's new demands came at a precarious time for GlobalTap. After the San Francisco launch, numerous potential customers – all of which Elkay was aware – had expressed interest in purchasing GlobalTap units, and GlobalTap had assumed – wrongly, it turned out – that Elkay would be eager to assist it in getting demonstration units and new designs into the field. San Francisco had expressed a need for 30 additional stations, some of them "combination units" – a filling station combined with a "bubbler" (a traditional drinking fountain). The Sales

and Distribution Agreement expressly contemplated new designs, and GlobalTap provided Elkay with designs for the combination units. Elkay used the provision of those designs as an opportunity to complain that GlobalTap was seeking more than what the Agreement required.

19. In early May of 2010, Elkay demanded that GlobalTap provide a written summary of all findings from the San Francisco pilot launch, as well as all pending projects and potential sales - information GlobalTap immediately provided. Elkay also informed GlobalTap that GlobalTap had to be designated as a "customer" of Elkay for the relationship to proceed.

20. Thereafter, Elkay essentially went "radio silent" and did not return GlobalTap's calls. This was problematic for Elkay, as its showcase project, San Francisco, was expecting Elkay to deliver 30 more units (including combination units), and Washington D.C., Toronto, Ottawa and London also were seeking to launch projects with GlobalTap.

21. Elkay resurfaced in late June of 2010 and apologized for what it called "the lapse in communications." Even after that, however, Elkay was evasive in communicating its commitments on the upcoming projects. On August 3, 2010, GlobalTap emailed Elkay "[W]e need to work toward getting the units ready for San Francisco for the Fall. I'm on the line with San Francisco (all the way to the Mayor's office) to get these ready so I am a little nervous about this."

**Elkay Drops The Hammer**

22. On August 5, 2010, Elkay resurfaced again – this time with shocking news: in a telephone conversation, Elkay stated that it would soon be launching its "own" outdoor bottle filling stations. On August 6, 2010 Elkay followed up that conversation with the following email:

> After further discussions at Elkay, we believe we have an opportunity that will meet your customers' needs. As we discussed yesterday, we are not in a position to expand the Global Tap product line as you are looking for. ***We are in the process of developing a modular outdoor bottle filling unit that would fit onto***

- 6 -

*our existing outdoor fountains.* The unit could be positioned on any of the circular fountains that we currently manufacture in any location that we have a basin. This would allow for greater flexibility to customers as they can determine how many bubbler/bottle fillers they would like on some of the units.

If you are interested we can create a separate branding for Global Tap on this series of units for your distribution. We would continue to distribute these under the Elkay name through our distributors, but would offer you the entire line as Global Tap line as well.

*Our plan is to have this line ready in four to six months.* I realize that you may have a tighter deadline for San Francisco, and we are willing to investigate the possibility of meeting this deadline with this product line as preliminary proto type units. As soon as we have copy of the industrial design I will forward it to you.

Please let me know if you are interested in this option.

(Emphasis added).

23. GlobalTap responded the next day that it needed Elkay to deliver the GlobalTap units for San Francisco, stating: "The City is expecting this launch in 15 locations to be in early October. I really need to know now if you can get these units read in time. If not, I will unfortunately have to find another alternative to protect GlobalTap's reputation."

24. Elkay responded on August 10, 2010:

You have communicated that there is a potential fall launch with Global Tap in the City of San Francisco. You have also indicated that the breakdown of units is as follows:

- 5 cane [*sic*] units
- 3 combo cane [*sic*] units
- 8 wall mount units

There are a number of issues with this:

- The cane [*sic*] unit is still in a prototype state as evidenced by the condition of the unit in Yerba Buena Gardens
- We indicated in an e-mail on 4-27-10 that for us to proceed with the combo unit will require a minimum 30 piece order and that no design, tooling or manufacturing work would commence on the unit until we had an order

- We have consistently indicated that we are not interested in the wall mount unit at this time since we had not sold any of the cane [*sic*] units

- Ultimately you are selling production quality units when they are either still in a prototype state or do not even exist at all

***It is clear from the above issues that you have continuously chosen to ignore our communications.*** As a result, you have put us both at risk. We have chosen to protect the interests of Elkay and will not put any more prototype units in the field. ***We understand that you may choose to go with another manufacturer with which to satisfy this potential order. If you do so, we will consider the Sales and Distribution Agreement dated 11-11-09 as terminated.***

As an alternative, ***we will have a line of Halsey Taylor outdoor bottle filling stations*** based upon our standard catalog tubular steel line of drinking fountains. ***We would be happy to private label this design with Global Tap colors*** and logo should you decide to use this version for your distribution channel. Please let us know if you would like to proceed down this path.

(Emphasis added).

25. Elkay's attempt to blame GlobalTap was contrived, and likely ghost-written by an attorney. And, given the fact that Elkay had no trouble funding the tooling for its "own" bottle filling stations (which GlobalTap would later learn included combination units), the conditions which Elkay placed on tooling for GlobalTap were made in bad faith.

26. The August 10, 2010 email represented a termination of the Sales and Distribution Agreement (particularly in light of Elkay's August 6, 2010 email). However, Elkay cleverly worded the document in such a way to suggest that if GlobalTap disagreed with Elkay, GlobalTap would be the party responsible for terminating the Agreement. Accordingly, on August 11, 2010, GlobalTap emailed Elkay the following question: "Rod, So are you saying that Elkay 'will not' manufacture 'cane units' for GlobalTap anymore, or has interest to manufacture other GlobalTap designs?" GloablTap also requested "Can we talk by phone today?" Elkay responded: "No, Franco and I are booked. Our letter was pretty clear where we stand, so we do not see a reason for another phone conference."

27. Elkay's actions dealt a devastating blow to GlobalTap, and very nearly drove it out of business. GlobalTap's contract with San Francisco called out GlobalTap units manufactured by Elkay. Moreover, GlobalTap had been marketing its units as being manufactured by Elkay. Accordingly, when Elkay pulled the plug, this raised red flags with San Francisco and other potential customers. Elkay's actions also left GlobalTap without any products. Elkay eventually found another manufacturer, but GlobalTap lost valuable time, money and credibility in the process.

28. GlobalTap later learned that Elkay's products -- which it launched after breaking with GlobalTap -- feature a similar height, width, look, and profile as the GlobalTap units. Its actuation button and water spout are in the same position as GlobalTap's product. The two products feature drains that are located at the same height and in the same position. Color selections for Elkay's unit, as well as its paint finish, mirror those for GlobalTap's Outdoor Bottle Filling Station. Last, Elkay offers the very same modular options as the GlobalTap product, including the combination unit. Indeed, Elkay's "Owners Manual" for the GlobalTap product is identical to its "Owners Manual" for Elkay's competing 4400BF outdoor bottle filling station product.

## COUNT I
## PATENT INFRINGEMENT

1-28. Plaintiff realleges and incorporates Paragraphs 1 through 28 of this Complaint as Paragraphs 1 through 28 of Count I.

29. GlobalTap is the owner of U.S. Design Patent No. D646,348S, issued October 4, 2011 and titled "Water Bottle Fountain With Side Bubbler" (the "'348 Patent").

30. Elkay's outdoor water bottle filing stations – at least models LK4420BF1UDB and LK4430BF1U – infringe the '348 patent, and GlobalTap is entitled to damages as a result of that infringement.

## COUNT II
## TRADE SECRET MISAPPROPRIATION

1-30. Plaintiff realleges and incorporates Paragraphs 1 through 30 of Count I as Paragraphs 1 through 30 of Count II.

31. The confidential information which GlobalTap provided Elkay constituted trade secrets under the Illinois Uniform Trade Secrets Act, 765 ILCS 1065/1, et seq.

32. At all times, GlobalTap took reasonable steps to maintain the confidentiality of its trade secrets, and it required Elkay to sign the Confidential Disclosure Agreement prior to the disclosure of its trade secrets.

33. Elkay misappropriated GlobalTap's trade secrets by using them in its decision to develop outdoor water bottle filling stations which would directly compete with GlobalTap's products.

34. Elkay's misappropriation was willful.

35. GlobalTap has been damaged by Elkay's misappropriation.

## COUNT III
## BREACH OF CONTRACT
### (Confidential Disclosure Agreement)

1-35. Plaintiff realleges and incorporates Paragraphs 1 through 35 of Count II as Paragraphs 1 through 35 of Count III.

36. Elkay's misuse of GlobalTap's confidential information constitutes a breach of the Confidential Disclosure Agreement.

37. GlobalTap has been damaged by Elkay's breach.

## COUNT IV
## BREACH OF CONTRACT

### (Sales And Distribution Agreement)

1-37. Plaintiff realleges and incorporates Paragraphs 1 through 37 of Count III as Paragraphs 1 through 37 of Count IV.

38. Elkay's actions constituted several breaches of the Sales and Distribution Agreement. These breaches included:

   a. Elkay's conditions for developing the tooling so that GlobalTap could sell its product, at a minimum, violated the implied covenant of good faith and fair dealing governing Elkay's discretion in specifying conditions under which GlobalTap could order product (Section 2.1). Moreover, Elkay was required to develop the tooling at its sole expense (Section 1.3). Finally, that Elkay was creating conditions as a pretext to scotch the deal is evident from the fact that it was secretly developing tooling for its "own" competing product at the same time it was complaining that GlobalTap had not met its conditions to achieve tooling.

   b. Elkay's termination of the Agreement breached Section 7.2, inasmuch as it did not give written notice of default and a 30-day opportunity to cure.

   c. Elkay's development and sale of the outdoor water bottle filling stations breached Sections 1.2, 7.3 and 8.1 of the Agreement.

## COUNT V
## FRAUD

1-38. Plaintiff realleges and incorporates Paragraphs 1 through 38 of Count IV as Paragraphs 1 through 38 of Count V.

39. Given the confidential relationship between the parties due to the Confidential Disclosure Agreement, and the fact that Elkay had committed to manufacturing GlobalTap's product, Elkay had a duty to disclose its plan to tool and launch its "own" product which would directly compete with GlobalTap's product.

40. Elkay deliberately kept that plan secret from GlobalTap.

41. Elkay's plan was material information.

42. GlobalTap was damaged by Elkay's failure to disclose. Had GlobalTap been contemporaneously informed of Elkay's plan, it would have sought other manufacturing alternatives early and would not have had to endure the Elkay-created path which nearly sank the company, resulting in a loss of business. It also would have had the opportunity to enforce its rights against Elkay well before nearly being driven from the very market which GlobalTap created.

## COUNT VI
## ALTERNATIVE CLAIM FOR UNFAIR COMPETITION

1-42. Plaintiff realleges and incorporates Paragraphs 1 through 42 of Count V as Paragraphs 1-42 of Count VI.

43. In the event that Elkay's decision to directly compete with GlobalTap was based on public information and not on GlobalTap's trade secrets (GlobalTap's pilot launch in San Francisco, for example), Elkay's conduct constitutes unfair competition.

## PRAYER FOR RELIEF

1. For **Count** I, Plaintiff GlobalTap respectfully requests that this Court enter judgment against Defendant Elkay granting the following relief:

   a. The entry of judgment in favor of GlobalTap and against Elkay;

   b. An injunction prohibiting Elkay from continuing its infringement;

   c. An award of damages against Elkay and adequate to compensate GlobalTap for the infringement that has occurred, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284 and Elkay's profits pursuant to 35 U.S.C. § 289, together with prejudgment interest from the date the infringement began; and

   d. Such other relief that GlobalTap is entitled to under law, and any further relief that this Court or a jury may deem just and proper.

2. For **Count II**, Plaintiff GlobalTap respectfully requests that this Court enter judgment against Defendant Elkay granting the following relief:

    a. The entry of judgment in favor of GlobalTap and against Elkay;

    b. Compensatory damages, including GlobalTap's actual losses and Elkay's unjust enrichment;

    c. Exemplary damages; and

    d. Such other relief that GlobalTap is entitled to under law, and any further relief that this Court or a jury may deem just and proper.

3. For **Count III**, Plaintiff GlobalTap respectfully requests that this Court enter judgment against Defendant Elkay granting the following relief:

    a. The entry of judgment in favor of GlobalTap and against Elkay;

    b. Compensatory damages; and

    c. Such other relief that GlobalTap is entitled to under law, and any further relief that this Court or a jury may deem just and proper.

4. For **Count IV**, Plaintiff GlobalTap respectfully requests that this Court enter judgment against Defendant Elkay granting the following relief:

    a. The entry of judgment in favor of GlobalTap and against Elkay;

    b. Compensatory damages; and

    c. Such other relief that GlobalTap is entitled to under law, and any further relief that this Court or a jury may deem just and proper.

5. For **Count V**, Plaintiff GlobalTap respectfully requests that this Court enter judgment against Defendant Elkay granting the following relief:

    a. The entry of judgment in favor of GlobalTap and against Elkay;

    b. Compensatory damages;

    c.       Punitive damages; and

    d.       Such other relief that GlobalTap is entitled to under law, and any further relief that this Court or a jury may deem just and proper.

6.      For **Count VI**, Plaintiff GlobalTap respectfully requests that this Court enter judgment against Defendant Elkay granting the following relief:

    a.       The entry of judgment in favor of GlobalTap and against Elkay;

    b.       Compensatory damages;

    c.       Punitive damages; and

    d.       Such other relief that GlobalTap is entitled to under law, and any further relief that this Court or a jury may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all of its claims.

                      Respectfully submitted,

                      */s/ Paul K. Vickrey*
                      Paul K. Vickrey
                      Olivia T. Luk
                      NIRO, HALLER & NIRO
                      181 W. Madison, Suite 4600
                      Chicago, IL 60602
                      (312) 236-0733
                      Fax: (312) 236-3137
                      vickrey@nshn.com
                      oluk@nshn.com
                      ***Attorneys for Plaintiff, GlobalTap LLC***